UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARAT ABDIEV,

                        Plaintiff,

           v.

MERRICK GARLAND, et al.,

                       Defendants.

23 Civ. 8091 (DEH)

**OPINION AND ORDER**

DALE E. HO, United States District Judge:

       Plaintiff Marat Abdiev ("Plaintiff" or "Abdiev") seeks a writ of mandamus compelling Defendants Attorney General Merrick Garland, Secretary of Homeland Security Alejandro Mayorkas, United States Citizenship and Immigration Services ("USCIS") Director Ur Mendoza Jaddou, and Asylum Office of Newark New Jersey Director Susan Raufer (collectively, "Defendants") to act on his pending application for asylum.  Abdiev also challenges Defendants' delay in processing his application under the Administrative Procedure Act ("APA"), 5 U.S.C. §§701-706.  Defendants filed a motion to dismiss Plaintiff's request for a writ of mandamus pursuant to Rule 12(b)(1), and Plaintiff's APA claim pursuant to Rule 12(b)(6).[1]  ECF No. 1. For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss.

---

[1] In all quotations from cases, citations, footnotes, brackets, ellipses, and emphases are omitted unless otherwise indicated.  All references to Rules are to the Federal Rules of Civil Procedure.

**BACKGROUND**

I.    **Factual Background**

The following facts are taken from the Complaint (unless otherwise indicated) and are assumed to be true solely for purposes of adjudicating Defendants' motion. All reasonable inferences are drawn in favor of Plaintiff as the non-moving party. *See Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023).

Plaintiff Marat Abdiev is a citizen of Kyrgyzstan, who currently resides in Manhattan. *See* Compl. for Writ of Mandamus ("Compl.") ¶ 1, ECF No. 9. On March 5, 2020, Abdiev filed his asylum application, utilizing a Form I-589 Application for Asylum and Withholding of Removal ("I-589"). *Id.*

On September 14, 2023, Plaintiff filed a complaint for writ of mandamus, requesting that this Court compel Defendants to adjudicate Plaintiff's I-589 Application, grant such other proper relief under the circumstances, and grant attorney's fees and costs pursuant to 5 U.S.C. § 504 and 28 U.S.C. § 2141(d). *See* Compl. ¶ 20. Plaintiff further requests that any adverse decision by Defendants include a justification and explanation for the result, in order to preclude possible retaliation for bringing this lawsuit and for "expos[ing] Defendants' inefficiency to senior officers of the District, regional, and central offices of USCIS and other interested parties within the Executive Branch." *Id.* ¶ 21.

Abdiev's application had been pending without action for approximately three-and-a-half years as of the filing of the Complaint. *See id.* ¶ 13. USCIS has taken no action to schedule Plaintiff for his initial interview to decide the merits of his application. *Id.* Abdiev asserts that USCIS has unreasonably delayed adjudication of his application, under the Mandamus Act, 28 U.S.C. §1361, and the APA, 5 U.S.C. §§701-706, and that Defendants have a nondiscretionary

duty to schedule him for an interview.  *See* Pl.'s Resp. Mem. 4, ECF No. 36.  He further argues that mandamus relief is appropriate because administrative remedies have been exhausted and there are no other available remedies at law.  *See* Compl. ¶ 11.

On December 12, 2023, Defendants filed this motion to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6).  *See* ECF No. 28.  Defendants argue that Abdiev fails to demonstrate a clear right to relief pursuant to 8 U.S.C. § 1158(d)(7), because Defendants do not owe Plaintiff a duty to adjudicate his application within a certain timeframe.  *See* Mem. of L. in Supp. of Defs.' Mot. to Dismiss the Compl. 11 ("Defs.' Br."), ECF No. 29.  Defendants also seek dismissal of the APA claim, citing decisions of courts in this Circuit holding that similar lengthy processing times for asylum applications do not amount unreasonable delay under the APA.  *See* Defs.' Br. 12-16.

## II.     The Affirmative Asylum Interview Process

The Asylum Division operates under a "Last In, First Out" ("LIFO") scheduling system. Under this system, the Division prioritizes the most recently filed affirmative asylum applications when scheduling interviews, with the aim of "deter[ring] individuals from using the asylum backlog solely to obtain employment authorization by filing frivolous, fraudulent, or otherwise non-meritorious asylum applications."  U.S. Citizenship and Immigration Services, *Affirmative Asylum Interview Scheduling*, https://perma.cc/P9HT-H6T5 (last updated Mar. 29, 2024).

According to the Affirmative Asylum Procedures Manual ("AAPM") 2016, affirmative asylum claims within the pool of cases that are ready to be scheduled for an interview are categorized into three groups: first priority, second priority, and third priority.  U.S. Citizenship and Immigration Services, Asylum Division, *Affirmative Asylum Procedures Manual* 8 (2016),

https://perma.cc/4Z8L-DW9Z.  First priority includes rescheduled cases, and operates on a LIFO system based on the filing date.  Second priority includes children's cases, and operates on a LIFO system.  Third priority includes other pending affirmative asylum applications (backlog cases), which are scheduled for interviews on a first in, first out (FIFO) system, based on the filing date.  *See id.*

According to Abdiev, while the current processing system was purportedly adopted to deter individuals from using the asylum application backlog to obtain employment authorization, it does so at the expense of legitimate applicants like himself.  *See* Compl. ¶ 16.

**DISCUSSION**

This Court recently granted a motion to dismiss in another case raising essentially the same claims, concluding: (1) there is no clear right to mandamus in this context; and (2) a delay in processing an asylum application of a duration like the one asserted here does not violate the APA.  *See Maxhuni v. Mayorkas*, No. 23 Civ. 9076, 2024 WL 3090165 (S.D.N.Y. June 20, 2024).  For the reasons set forth in that opinion and below, the Court grants Defendants' motion to dismiss without prejudice.

I.    **Mandamus**

28 U.S.C. § 1361 provides that a district court has original jurisdiction to compel an officer or employee of the United States or any agency to perform a duty owed to a plaintiff.  28 U.S.C. § 1361.  Mandamus is an extraordinary remedy that requires a showing of a "clear and indisputable right" to its issuance.  *Miller v. French*, 530 U.S. 327, 339 (2000).  It is inappropriate if there is no plainly defined clear nondiscretionary duty.  *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989). To succeed, a plaintiff must establish three elements laid out by the Second Circuit in *Benzman v. Whitman*: (1) there is a clear right to the relief sought; (2) the

Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available.  523 F.3d 119, 132-33 (2d Cir. 2008) (citing *Anderson*, 881 F.2d at 5.

As this Court held in *Maxhuni*, USCIS does not have a plainly defined and peremptory duty to provide asylum applicants with an initial interview within a particular timeframe.  *See Maxhuni*, 2024 WL 3090165, at *1.  It is true that under the Immigration and Nationality Act (the "INA"), initial interviews for asylum applications should take place within 45 days of the application and final adjudication should be completed within 180 days of the application.  *See* 8 U.S.C. § 1158(d)(5)(A).  But as Plaintiff acknowledges, the statute also provides that "nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."  *Id.* § 1158(d)(7); *see* Pl.'s Resp. Mem. 7.

Courts in this Circuit have uniformly held that this provision bars asylum applicants from establishing that they have a clear right to adjudication within the time periods laid out in § 1158, for purposes of mandamus relief.  *See, e.g.*, *Ngai v. Mayorkas*, No. 22 Civ. 5358, 2024 WL 1346530, at *2 (E.D.N.Y. Mar. 29, 2024) ("A legion of courts has held that § 1158(d)(7) unequivocally denies asylum applicants a private right of action to enforce the procedural requirements found in that statute."); *Chen v. Wolf*, No. 19 Civ. 9951, 2020 WL 6825681, at *3 (S.D.N.Y. Nov. 20, 2020) ("This Court agrees with the chorus of other courts across the country that have concluded that § 1158(d)(7) of the INA bars Plaintiff from claiming any legally enforceable right to have his application adjudicated within the provided timeframes."); *Xu v. Cissna*, 434 F. Supp. 3d 43, 52 (S.D.N.Y. 2020) ("Plaintiff has no statutory right to sue Defendants based upon their failure to adjudicate his asylum claim within the time frame laid out

in § 1158(d); the Court would lack subject matter jurisdiction over such a claim."). Because

Plaintiff has not established a clear right to the relief he seeks, his application for a writ of

mandamus is denied.

**II.    APA Claim**

5 U.S.C. § 555(b) provides that, "with due regard or the convenience and necessity of the

parties and their representatives *within a reasonable time*, each agency shall proceed to conclude

a matter presented before it" (emphasis added). Thus, a court may "compel agency action

unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). But it can do so solely when

"an agency fail[s] to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah*

*Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).

The D.C. Circuit has provided guidance on when agency action has been unreasonably

delayed under the APA in *Telecommunications Research and Action Center v. FCC*, 750 F. 2d

70 (D.C. Cir. 1984) ("*TRAC*"), setting forth six relevant factors. They are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable in the enabling statute [it] may supply
> content for this rule of reason; (3) delays that might be reasonable in the sphere of
> economic regulation are less tolerable when human health and welfare are at stake;
> (4) the effect of expediting delayed action on agency activities of a higher or
> competing priority; (5) the nature and extent of the interests prejudiced by delay;
> and (6) the court need not find any impropriety lurking behind agency lassitude in
> order to hold that agency action is unreasonably delayed.

750 F.2d at 80. Courts in this Circuit have applied the *TRAC* factors in cases challenging delays

in processing asylum applications under the APA. *See, e.g.*, *Sheiner v. Mayorkas*, No. 21 Civ.

5272, 2023 WL 2691580, at *5 (S.D.N.Y. Mar. 29, 2023); *Saharia v. USCIS*, No. 21 Civ. 3688,

2022 WL 3141958, at *3 (S.D.N.Y. Aug. 5, 2022); *Cohen v. Jaddou*, No. 21 Civ. 5025, 2023

WL 2526105, at *2 (S.D.N.Y. Mar. 15, 2023). "Although no single factor is dispositive, the first

and fourth factors generally carry the most weight." *Qi v. USCIS*, No. 23 Civ. 8843, 2024 WL 2262661, at *5 (S.D.N.Y. May 17, 2024).

As this Court has previously determined, the *TRAC* factors, taken together, counsel against a finding of unreasonable delay in cases like this. *See Maxhuni*, 2024 WL 3090165 at **2-4.

### 1. The First and Fourth *TRAC* Factors

The Court begins its analysis with the most significant *TRAC* factors—the first (whether the time for agency action is governed by a rule of reason) and the fourth (the effect of expediting action on agency activities).

With respect to the first factor, courts in this Circuit have consistently found that USCIS's use of a LIFO scheduling system—"scheduling asylum interviews for recent applications ahead of older filings," *Konde v. Raufer*, No. 23 Civ. 4265, 2024 WL 2221227, at *2 (S.D.N.Y. May 16, 2024)—is a rule of reason for purposes of the *TRAC* factors. *See also Qi*, 2024 WL 2262661, at *5 ("[C]ourts, in this Circuit and elsewhere, have consistently held that the Last-In-First-Out system is a rule of reason for purposes of the first TRAC factor." (collecting cases)). Even though it is true that the LIFO rule "forces asylum applicants who filed earlier to bear the brunt of th[e] delays," courts have consistently held that the rule is "a reasoned attempt to address mounting issues with the asylum application process." *Xu*, 434 F. Supp. 3d at 53. There is an extensive backlog of asylum applications, and the LIFO system is intended to help USCIS prioritize its processing of the high volume of applications before it.

With respect to the fourth *TRAC* factor (the effect of expediting agency action), the Court declines to grant relief with respect to any one asylum application, even long-pending ones such as Plaintiff's, because of the effect that such relief would have on similar applications. *See, e.g.*,

*Xu*, 434 F. Supp. 3d at 54-55 ("The effect of leapfrogging Plaintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication.").

Plaintiff argues that, notwithstanding the presence of a backlog, he still has an individualized right to consideration of his legal injuries in a timely manner, and that any backlog exists only because of mismanagement by Defendants through their "ever changing policy choices regarding the order in which applications are adjudicated." *See* Pl.'s Resp. Mem. 2. This argument fails because, as discussed, the Court concludes that USCIS has adopted the LIFO system as a rule of reason in response to the increase in asylum applications. *See Konde*, 2024 WL 2221227, at *4 ("Plaintiff's insistence that she is not cutting the line but rather trying to maintain the integrity of the line . . . fails to persuade, as she merely attempts to substitute her own notion of integrity as to the asylum application process for that of the agency.").

### 2. The Remaining *TRAC* Factors

As to the second factor (the existence of a statutory timetable), as previously discussed, Section 1158(d) includes timeframes for the processing of asylum applications, and provides that "final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." 8 U.S.C. § 1158(d)(5). Although Plaintiff's wait has exceeded that time period, Section 1158(d) also has explicit language providing that its processing time periods are not enforceable. *See* 8 U.S.C. § 1158(d)(7). The statutory time periods, therefore, do not lead the Court to conclude that the second *TRAC* factor weighs in Plaintiff's favor.

As to the third factor (human health and welfare) and fifth factor (the nature and extent of the interests prejudiced), Plaintiff states that, because of his uncertain status, he has experienced

"ongoing injuries" and "significant anguish due to family separation and concerns about the safety of his family in Kyrgyzstan"—cutting against the INA's central policy of promoting family unity. *See* Pl.'s Resp. Mem. 9. According to Plaintiff, Defendants' policies effectively leave Plaintiff and others with legitimate asylum claims in "a permanent state of limbo." Compl. ¶ 17. The Court is sympathetic and recognizes "how several years in limbo might generally take a toll on an asylum applicant." *Konde*, 2024 WL 2221227, at *4. But courts have consistently held that these burdens—at least as experienced thus far by Plaintiff—are not of the severity or kind that weigh in favor of asylum applicants seeking APA review. *See Punt v. USCIS*, No. 22 Civ. 1218, 2023 WL 157320, at *5 (D.D.C. Jan. 11, 2023) ("However understandable [Plaintiff's] desire to see prompt adjudication of his petition, the hardships he asserts do not implicate the kinds of serious health and welfare interests to which the third and fifth TRAC factors are primarily addressed.") (collecting cases).

Finally, as to the sixth *TRAC* factor, Plaintiff does not allege any bad faith with respect to the delay in adjudicating his application, meaning it favors neither party. *See Qi*, 2024 WL 2262661, at *7 ("Plaintiff does not allege bad faith, unfairness, or other impropriety, so the sixth TRAC factor is neutral.").

*    *    *

Taken together, the *TRAC* factors—in particular, that USCIS's processing of asylum applications is governed by a rule of reason (the first factor) and that granting relief in this case would only serve to leapfrog Plaintiff's application ahead of others (the fourth factor)—point to the conclusion that Plaintiff does not, at least at this time, have a valid claim for relief under the APA.

## CONCLUSION

For the reasons stated above, the motion to dismiss is **GRANTED**.

In so ruling, the Court notes that Plaintiff has now waited more than four years for a determination on his asylum application, a wait that he states—and which the Court does not doubt—has exerted a considerable toll on him and on his family.[2]  His situation is a significant departure from the 180-day period laid out by Congress, and what USCIS continues to represent on its website as the timeline for decisions on asylum application.  *See* U.S. Citizenship & Immigration Servs., *Questions and Answers: Affirmative Asylum Eligibility and Applications* (updated Sept. 11, 2023) ("A decision should be made on your asylum application within 180 days after the date you filed your application unless there are exceptional circumstances.").

This decision should not be interpreted to suggest that USCIS may delay a decision on Plaintiff's application indefinitely.  8 U.S.C. § 208 makes it plain that USCIS "*shall* adjudicate the claim of each asylum applicant whose application is complete within the meaning of § 208.3(a)(2) or (c)(3)."  8 U.S.C. § 208.9(a) (emphasis added).  And "[t]he duty to act is no duty at all if the deadline is eternity." *Tang v. Chertoff*, 493 F. Supp. 2d 148, 149 (D. Mass. 2007); *see also Saleem v. Keisler*, 520 F. Supp. 2d 1048, 1055 (W.D. Wis. 2007) ("If defendants have an obligation to decide applications but have unfettered discretion to put off deciding an application for as long as they want, how could the duty to decide ever be judicially enforced?"). At some point, Defendants' continued failure to act on Plaintiffs' asylum application, if it continues, may be so severe as to give rise to an APA violation.  This dismissal is therefore "without prejudice to renewal, should Plaintiff's application for asylum remain pending without decision to an unreasonable degree."  *Konde*, 2024 WL 2221227, at *5.

---

[2] Plaintiff is apparently far from alone.  According to the American Immigration Lawyers Association, as of August 2023, asylum seekers before USCIS have an estimated wait time of more than six years. *See* Nat'l Immigr. F., *Explainer: Asylum Backlogs* (Jan. 23, 2024), https://perma.cc/B3FX-7CPH.

The Clerk of Court is respectfully requested to terminate ECF No. 28 and to close the

case.

SO ORDERED.

Dated: August 8, 2024
       New York, New York

_____
DALE E. HO
United States District Judge